**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

**ANGEL JENKINS,** on behalf of herself and all others similarly situated,

Docket No.:1:26-CV-4754

Plaintiff,

AMENDED COMPLAINT & DEMAND FOR JURY TRIAL

-v.-

**ARCTIC COOL USA LLC,**

Defendant.

---------------------------------------------------------------------x

Plaintiff **ANGEL JENKINS** ("Plaintiff" or "Ms. Jenkins"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this action against **ARCTIC COOL USA, LLC** ("Arctic Cool" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's

failure to design, construct, maintain, and operate its ecommerce website, **www.arcticcool.com**, in a manner that is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. **Plaintiff Angel Jenkins** is a resident of New York County and is permanently disabled due to **Retinitis Pigmentosa**, a progressive inherited retinal degenerative disease that has caused **severe and permanent bilateral vision loss meeting the criteria for legal blindness**. Ms. Jenkins' treating physician, **Dr. Robert Friedman, M.D., O.D., of Mount Sinai Morningside**, confirms that her visual impairment constitutes legal blindness pursuant to New York State classification under Condition #3 ("Blindness, better eye, with visual field limitation less than 20 degrees") as reported on her New York State Report of Legal



Blindness (OCFS-4599). Her

diagnosis is Retinitis Pigmentosa, and her condition has been formally registered with the New York State Commission for the Blind (Registration No. A.19038). Her vision loss is permanent and irreversible.

2. As a legally blind individual, **Ms. Jenkins relies exclusively on screen-reading software and keyboard navigation** to access digital content independently, such as NVDA and JAWS. Because she cannot visually interpret website content, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader compatible navigation. For Ms. Jenkins, accessible coding is not optional—it is the only means by which she can access the internet.

3. Ms. Jenkins is an active woman who engages in regular outdoor activity and exercise. In early 2026, she sought to independently browse and purchase high-performance women's cooling activewear for use during outdoor workouts and warm-weather physical activity. Arctic Cool is a premium direct-to-consumer activewear brand whose signature **HydroFreeze X™ technology**—a proprietary, sweat-activated cooling system embedded in performance fabric—is patented and exclusively available through **www.arcticcool.com**. No other online retailer or activewear brand offers comparable sweat-activated cooling performance integrated with UPF 50+ sun protection, ActiveWick™ moisture management, and four-way stretch in the same range of women's silhouettes and colorways. Ms. Jenkins specifically sought to purchase a **Women's Cooling V-Neck Short Sleeve T-Shirt**, a **Women's Cooling Legging**, and a **Women's Cooling Sundress**, all of which are featured prominently on Defendant's website as core women's collection products. Ms. Jenkins chose **www.arcticcool.com** specifically because it is the only source for these products featuring Arctic Cool's proprietary cooling technology, which is not replicated or available through any other retailer, marketplace, or online platform.

4. According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5. The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6. Screen-reading software works by converting digital content into synthesized speech or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper form structure, display animated content without controls, or contain broken interactive elements cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7. The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under

the ADA.

8. Plaintiff brings this civil action against Arctic Cool USA, LLC, the operator of **www.arcticcool.com**, for its failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website —and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA.

9. On **January 20, 2026**, **March 11, 2026**, and **May 6, 2026**, Ms. Jenkins attempted to access **www.arcticcool.com** using her screen-reading software in order to browse and purchase women's cooling activewear. On each occasion, she was unable to complete the intended purchase due to pervasive accessibility barriers on the Website that rendered it incompatible with her screen-reading software. Despite repeated attempts on multiple dates, the same barriers persisted throughout the site.

10. Notably, Arctic Cool was previously sued for identical violations of the ADA's website accessibility requirements. *See Castro v. Arctic Cool, LLC*, Case No. 1:2023cv09029 (S.D.N.Y.) (the "Castro Action"). Upon information and belief, that action was settled in or around February 2024, at which time Defendant, upon information and belief, agreed to remediate its website's accessibility barriers within twenty-four (24) months. That remediation deadline—February 2026—has now passed, yet the same or substantially similar accessibility barriers that formed the basis of the Castro Action continue to persist on **www.arcticcool.com** unabated. Defendant has failed to fulfill its obligation to make its Website accessible to blind and visually impaired users, notwithstanding its prior exposure to litigation and its presumed agreement to remediate.

11. Ms. Jenkins intends to return to **www.arcticcool.com** to make purchases once the accessibility barriers are remediated. Ms. Jenkins has a genuine, ongoing desire to purchase Arctic Cool's women's cooling activewear, including the Women's Cooling V-Neck Short Sleeve T-Shirt, the Women's Cooling Legging, and the Women's Cooling Sundress, in light of the unique and proprietary HydroFreeze X™ cooling technology that no other brand offers. Her intent to return to the Website is not speculative—it is grounded in her specific and ongoing desire for products available only through Defendant's platform. She is deterred from doing so now solely because the Website remains inaccessible to her screen-reading software.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over Plaintiff's ADA claim pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12188.

13. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because, upon information and belief, Defendant's principal place of business is located at 10 W. 33rd Street, Suite 520, New York, New York 10001, a substantial part of the events and omissions giving rise to the claims herein occurred in this District, and Plaintiff resides in this District and was denied equal access to goods and services while located within this District.

## PARTIES

15. **Plaintiff Angel Jenkins** is a resident of New York County, residing at 228 West 124th Street, Apt. #23, New York, New York 10027. Ms. Jenkins is legally blind as a result of Retinitis Pigmentosa, a progressive retinal degenerative disease causing visual field limitation less than 20 degrees in her better eye, as documented by her treating physician, Dr. Robert Friedman, M.D.,

O.D., of Mount Sinai Morningside, 1001 Park Avenue, New York, New York 10028. Ms. Jenkins is registered with the New York State Commission for the Blind (Registration No. A.19038). She qualifies as an individual with a "disability" within the meaning of the ADA, 42 U.S.C. § 12102, and she is a member of the class of persons protected by Title III of the ADA.

16. **Defendant Arctic Cool USA, LLC** ("Arctic Cool" or "Defendant") is, upon information and belief, a limited liability company organized and existing under the laws of the State of New York, with its principal place of business at 10 W. 33rd Street, Suite 520, New York, New York 10001. Defendant owns, operates, and maintains the retail ecommerce website **www.arcticcool.com**, through which it sells premium cooling performance activewear to consumers throughout the United States, including within this District. Defendant is a place of public accommodation as defined by Title III of the ADA, 42 U.S.C. § 12181(7).

## FACTUAL BACKGROUND

### A. Plaintiff's Visual Impairment and Use of Screen-Reading Software

17. Ms. Jenkins has been diagnosed with Retinitis Pigmentosa, an inherited progressive retinal degeneration causing severe, permanent bilateral vision loss. Her condition has been formally evaluated and documented by her treating physician, Dr. Robert Friedman, M.D., O.D., of the Mount Sinai Morningside Eye Center, located at 1001 Park Avenue, New York, New York 10028, who examined Ms. Jenkins on April 12, 2025. Dr. Friedman completed and executed a New York State Report of Legal Blindness (Form OCFS-4599), certifying that Ms. Jenkins' visual impairment meets the criteria for legal blindness pursuant to New York State classification, specifically Condition #3: "Blindness, better eye, with visual field limitation less than 20 degrees." Ms. Jenkins' visual condition is caused by Retinitis Pigmentosa and is permanent and irreversible.

18. As a result of her visual disability, Ms. Jenkins is unable to use a standard computer monitor or to navigate websites using conventional visual means. She relies on screen-reading

software—including **NVDA (NonVisual Desktop Access)** and **JAWS (Job Access With Speech)**—to access and interact with digital content, including ecommerce websites. These programs convert on-screen text, images, and interactive elements into audible speech or refreshable Braille output, enabling Ms. Jenkins to browse and navigate websites independently. Her ability to do so is entirely dependent upon websites being coded in conformance with recognized accessibility standards, including the WCAG 2.1 guidelines published by the W3C.

19. When a website is not properly coded to be compatible with screen-reading software, the software cannot translate the website's content into speech or Braille. As a result, Ms. Jenkins is unable to navigate the website, understand its content, or interact with any of its features—including selecting product options, adding items to a cart, or completing a purchase. In such circumstances, Ms. Jenkins is denied the same access to goods and services that is freely available to sighted users.

## B. Defendant's Website and Products

20. Defendant Arctic Cool USA, LLC operates **www.arcticcool.com**, a highly interactive direct-to-consumer ecommerce platform offering premium performance cooling activewear for men and women. Defendant's flagship products feature its proprietary **HydroFreeze X™ technology**—a patented, sweat-activated cooling system integrated directly into the fabric—combined with **ActiveWick™** moisture management, UPF 50+ sun protection, and four-way stretch construction. These technologies are proprietary to Arctic Cool and are not available through any other activewear manufacturer, brand, or retailer. Defendant markets its products exclusively online through **www.arcticcool.com**, and its women's collection features a range of silhouettes and styles designed for active outdoor use.

21. The Website includes numerous highly interactive components: product collection pages with dynamic filtering and sorting, individual product pages with color and size selectors

embedded within fieldset/legend form elements, animated GIF and video content, currency and country selectors, navigational links, promotional blog content, a search function, a shopping cart, and a checkout process. Each of these components must be accessible to screen-reading software in order for blind and visually impaired users to have equal access to the goods and services offered.

22. Ms. Jenkins specifically sought to purchase the following three (3) products from Defendant's women's collection:

- **Women's Cooling V-Neck Short Sleeve T-Shirt** — a core women's short-sleeve top featuring HydroFreeze X™ cooling technology, available in multiple colorways, prominently featured on the women's cooling collection page at *www.arcticcool.com/products/womens-v-neck-shirt*;
- **Women's Cooling Legging** — a signature women's performance legging featuring HydroFreeze X™ and four-way stretch construction, available in multiple colorways, prominently featured on the women's bottoms and clothing collection pages; and
- **Women's Cooling Sundress** — a women's casual performance dress featuring HydroFreeze X™ technology and UPF 50+ protection, available in multiple colorways, prominently featured on the women's new arrivals collection page at *www.arcticcool.com/collections/womens-new-arrivals*.

23. None of the foregoing products—or any product with equivalent proprietary HydroFreeze X™ cooling technology—is available for purchase through any retailer, marketplace, or online platform other than **www.arcticcool.com**. This exclusivity made Defendant's website the only place Ms. Jenkins could obtain the specific products she sought, and is the primary reason she selected **www.arcticcool.com** over all other activewear retailers.

## C. Prior ADA Litigation and Failure to Remediate

24. Defendant Arctic Cool, LLC was previously the named defendant in *Castro v. Arctic Cool, LLC*, Case No. 1:2023cv09029 (S.D.N.Y.) (Schofield, J.) (the "Castro Action"), a putative class action complaint asserting violations of Title III of the ADA arising from the inaccessibility of **www.arcticcool.com** to blind and visually impaired users. The Castro Action was filed in the

United States District Court for the Southern District of New York. Upon information and belief, the Castro Action was settled in or around February 2024, and Defendant agreed, as a condition of settlement, to remediate the accessibility barriers on its website within twenty-four (24) months—i.e., by no later than February 2026.

25. As of the date of this Complaint—and as confirmed by an independent automated accessibility audit of **www.arcticcool.com** conducted on June 4, 2026, using SortSite version 42 web accessibility validation software—the twenty-four-month remediation window has elapsed and the Website continues to contain pervasive, systemic accessibility barriers that render it inaccessible to screen-reading software. Defendant has failed to honor its prior commitment to remediate. The same or substantially similar accessibility deficiencies that gave rise to the Castro Action persist on the Website to this day.

**D. Plaintiff's Attempts to Access the Website and Barriers Encountered**

26. On **January 20, 2026**, Ms. Jenkins attempted to access **www.arcticcool.com** using NVDA screen-reading software to browse and purchase the Women's Cooling V-Neck Short Sleeve T-Shirt, the Women's Cooling Legging, and the Women's Cooling Sundress. She was unable to successfully navigate the Website, select product options, or complete a purchase due to the accessibility barriers described herein, including but not limited to unlabeled form fields, animated images that could not be paused or dismissed, image elements with meaningless file-name alt text, and form group labels that her screen reader was unable to voice.

27. On **March 11, 2026**, Ms. Jenkins returned to **www.arcticcool.com** and again attempted to browse the women's collection, locate the same products, and initiate a purchase. She encountered the same or substantially similar barriers during this second visit. Despite additional attempts to navigate the product pages and color/size selectors, she remained unable to fully interact with the Website due to the continuing accessibility deficiencies documented herein.

28. On **May 6, 2026**, Ms. Jenkins made a third attempt to access **www.arcticcool.com** in the hope that the Website's accessibility barriers had been corrected following the expiration of the prior remediation window. The same barriers persisted. Ms. Jenkins was again unable to independently complete a purchase on the Website using her screen-reading software. Her experience confirmed that no meaningful accessibility remediation had been undertaken by Defendant.

29. The accessibility barriers Ms. Jenkins encountered during each of her visits, as confirmed and documented by the SortSite accessibility audit conducted on June 4, 2026, include but are not limited to the following:

- **Unlabeled fieldset elements (1,571 pages):** The first child element inside a fieldset must be a legend element providing a label for the group. On product pages throughout the Website—including the Women's Cooling V-Neck Short Sleeve T-Shirt page and hundreds of other product pages—fieldset elements containing size and color selector controls lack properly positioned legend elements. When Ms. Jenkins attempted to navigate the product selection forms using NVDA, her screen reader was unable to voice the form group labels, rendering the color and size selection controls meaningless and unusable. This error violates WCAG 2.1 Success Criterion 1.3.1 and Technique H71, and was found on 1,571 pages of the Website.
- **Image file names used as alternative text (1,564 pages):** Images on the Website—including technology icon images displaying the "HydroFreeze" and "ActiveWick" branding on product pages for the Women's Cooling V-Neck Short Sleeve T-Shirt and the Women's Cooling Scoop Neck 3/4 Sleeve T-Shirt, among others—use file names such as "hydrofreeze.png" and "activewick.png" as their alternative text attributes. When Ms. Jenkins' screen reader encountered these images, it read aloud meaningless raw file names rather than a description of the image's content. This violates WCAG 2.1 Success Criterion 1.1.1 (Non-text Content) and Failure F30, and was found on 1,564 pages.
- **Animated images without pause or stop controls (77 pages):** Animated GIF images playing continuously for more than five seconds—with no mechanism to pause, stop, or hide the animation—appear on multiple pages, including on the Women's Cooling Sundress product listing within the women's new arrivals collection (*Womens_Cooling_Sundress_GlacierBlue_Lifestyle.gif*) and on men's new arrivals pages. This violates WCAG 2.1 Success Criterion 2.2.2 (Pause, Stop, Hide) and Failure F7. When Ms. Jenkins encountered animated product images, she was unable to pause or dismiss the animations, and the constant motion created an inaccessible and disorienting navigation experience.

- **Video content without pause control (1 page):** A video lasting more than five seconds plays on the Vortex Vent collection page (*arcticcool.com/collections/vortex-vent*) without any mechanism for the user to pause, stop, or hide it. This violates WCAG 2.1 Success Criterion 2.2.2 (Pause, Stop, Hide), making that page's content inaccessible and disorienting for screen reader users.

- **Improperly structured list elements (1,659 pages):** The Website contains "li" (list item) elements that appear outside of "ol" (ordered list) or "ul" (unordered list) parent elements throughout the site, including on the homepage, account/login page, cart, search, and hundreds of product and collection pages. Because the list items lack parent list container elements, Ms. Jenkins' screen reader did not voice them as list content, causing navigational confusion and preventing her from understanding the structure of the page's content. This violates WCAG 2.1 Success Criterion 1.3.1 (Info and Relationships), and was found on 1,659 pages.

- **HTML form controls with no accessible name (57 pages):** Form controls on the Website—including controls on the homepage, collection pages, and content pages—lack associated accessible names. Without an accessible name, Ms. Jenkins' screen reader could not identify or announce the purpose of these controls, preventing her from interacting with them. This violates WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value) and Failure F68, and was found on 57 pages.

- **iframe and frame elements without title attributes (1,565 pages):** Inline frames ("iframe" elements) embedded throughout the Website—including on the technology overview page (*pages/tech*), product pages for the Women's Cooling V-Neck Short Sleeve T-Shirt, and hundreds of product variant pages—lack descriptive "title" attributes. When Ms. Jenkins' screen reader encountered these frames, it read aloud raw file-name identifiers rather than a meaningful description of the frame's content, preventing her from understanding or navigating frame content. This violates WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value), and was found on 1,565 pages.

- **Images missing accessible names (99 pages):** Images throughout the Website lack any alt attribute or accessible name, causing Ms. Jenkins' screen reader to either skip the image entirely or read aloud the image's file path as a URL. This violates WCAG 2.1 Success Criterion 1.1.1 (Non-text Content) and Failure F65, and was found on 99 pages.

- **Flashing images exceeding seizure-risk thresholds (16 pages):** Animated images on the Website—including multiple MagnaReady and men's cooling button-down-shirt animated images—flash at 6.29 times per second at 1,200 x 1,200 pixels, exceeding the flash-frequency threshold that can trigger photosensitive seizures. This violates WCAG 2.1 Success Criterion 2.3.1 (Three Flashes or Below Threshold), and was found on 16 pages.

- **Links with non-descriptive "Read more" text (14 pages):** Numerous links throughout the Website—particularly on blog and news pages—use generic link text such as "Read more" with no surrounding context enabling a screen reader user to determine the link's destination or purpose. This violates WCAG 2.1 Success Criteria 2.4.4 and 2.4.9 (Link Purpose) and Failure F63, and was found on 14 pages.

- **Links without accessible names (9 pages):** Links on collection pages including women's new arrivals, men's new arrivals, men-workwear, and other collection pages lack any accessible name, depriving Ms. Jenkins' screen reader of the information needed to announce the link's purpose. This violates WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value), 2.4.4, and 2.4.9 (Link Purpose) and Failure F89, and was found on 9 pages.
- **Interactive button nested inside link element (5 pages):** Button elements on the homepage and blog pages are coded as descendants of anchor ("a") elements, creating improperly nested interactive controls. Screen readers cannot correctly voice the name, role, or state of an interactive control nested inside another interactive control, causing Ms. Jenkins' assistive technology to behave unpredictably when navigating these elements. This violates WCAG 2.1 Success Criterion 4.1.2 (Name, Role, Value) and HTML5 standards, and was found on 5 pages.
- **Empty heading elements (1 page):** The Website's return policy page (*pages/return-policy*) contains an empty heading element that provides no content. Screen readers voice empty headings as navigation landmarks without meaningful content, creating a confusing and misleading navigational experience for Ms. Jenkins. This violates WCAG 2.1 Success Criterion 1.3.1 (Info and Relationships).

30. The foregoing barriers, individually and collectively, prevent Ms. Jenkins from independently navigating, browsing, selecting products, and completing purchases on **www.arcticcool.com**. They are pervasive throughout the Website, affecting substantially all pages, including the homepage, all collection pages, all product pages, the search function, the cart, the account/login page, and content pages. They are systemic in nature and reflect a failure of the Website's underlying code and design to conform to recognized accessibility standards.

31. These barriers are not unique to Ms. Jenkins. They affect all individuals who rely on screen-reading software to access the internet, including NVDA and JAWS users. Each of the violations documented above has been confirmed as causing material interference with screen reader access across multiple major assistive technology platforms and browser combinations tested by SortSite, including NVDA (Chrome, Firefox, Edge), JAWS (Chrome, Firefox, Edge), and VoiceOver (macOS, iOS).

**E. Readily Achievable Barrier Removal**

32. The accessibility barriers identified on **www.arcticcool.com** are not technically complex or difficult to remediate. Each of the violations described herein has a well-established, straightforward technical solution that is widely implemented across the internet. Adding properly positioned legend elements to fieldset groups, replacing file-name alt text with meaningful descriptive text, providing accessible names for form controls, iframes, images, and links, adding pause and stop controls to animated content, and correcting HTML structural errors (such as orphaned list items and improperly nested interactive elements) are all standard web development practices that are routinely and readily implemented at minimal cost. Industry guidelines, documentation, and code examples for each of these remediation steps are freely available through the W3C, the U.S. Access Board, and numerous accessibility authorities. Barrier removal is readily achievable under 42 U.S.C. § 12182(b)(2)(A)(iv).

33. Moreover, given Defendant's prior exposure to ADA website accessibility litigation through the Castro Action, Defendant was fully on notice of the specific nature and scope of the accessibility barriers on its Website. The failure to remediate these barriers within the agreed-upon timeframe—and their continuing persistence as of the date of this Complaint—reflects a deliberate or grossly negligent failure to comply with Defendant's legal obligations under Title III of the ADA and applicable state and city law.

CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of herself and all other persons similarly situated. The class Plaintiff seeks to represent is defined as follows:

> *All legally blind individuals in the United States who have attempted to access* **www.arcticcool.com** *and, as a result of Defendant's failure to design, construct, maintain, and operate its website in compliance with WCAG 2.1 guidelines and*

*Title III of the ADA, have been denied full and equal access to the goods, services, and information available on the Website (the "Class").*

35. Plaintiff also brings this action on behalf of a subclass consisting of all legally blind individuals in the State of New York who are members of the Class, and who have been denied full and equal enjoyment of the goods, services, and advantages of **www.arcticcool.com** in violation of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq., the New York State Civil Rights Law, N.Y. Civ. Rights Law §§ 40 et seq., and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq. (the "New York Subclass").

36. The Class is so numerous that joinder of all members is impracticable. The number of legally blind individuals in the United States is in the millions. Upon information and belief, a significant number of those individuals have attempted to access **www.arcticcool.com** and have been denied full and equal access due to its inaccessibility.

37. There are questions of law and fact common to the Class, and those questions predominate over any questions affecting only individual members, including but not limited to: (i) whether **www.arcticcool.com** violates Title III of the ADA by failing to be accessible to blind users; (ii) whether Defendant has failed to take the steps necessary to make the Website fully accessible; (iii) whether Defendant's Website meets the applicable WCAG 2.1 accessibility standards; and (iv) whether Plaintiff and the Class are entitled to the relief sought herein.

38. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all other members of the Class, is legally blind and relies on screen-reading software to access websites. Plaintiff encountered the same accessibility barriers on **www.arcticcool.com** that other legally blind users encounter. Plaintiff suffered the same harm—denial of full and equal access to Defendant's goods and services—as have the other members of the proposed Class.

39. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has

retained counsel with substantial experience in disability rights class action litigation under the ADA. Plaintiff's interests are fully aligned with those of the Class, and there are no conflicts of interest between Plaintiff and the Class.

40. Defendant has acted or refused to act on grounds generally applicable to the Class, making final injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Defendant's systemic failure to design, maintain, and operate its Website in a manner accessible to blind individuals constitutes a uniform and continuing policy and practice that affects all Class members in the same manner.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.**
**(On Behalf of Plaintiff and the Class)**

41. Plaintiff incorporates by reference each of the foregoing allegations.

42. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

43. Defendant Arctic Cool USA, LLC operates **www.arcticcool.com** as a place of public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7). The Website is the primary and exclusive means by which Defendant sells its goods and services to the public.

44. As a legally blind individual who uses screen-reading software to access websites, Plaintiff is a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102.

45. Defendant has discriminated against Plaintiff, and continues to discriminate against Plaintiff and all others similarly situated, by failing to make its Website accessible to screen-reading software in violation of 42 U.S.C. §§ 12182(b)(1)(A)(i)–(iii) and 12182(b)(2)(A)(ii)–(iv). The specific barriers identified herein, including the failure to provide properly labeled form controls, meaningful alternative text, controls for animated content, properly structured HTML, accessible iframe titles, accessible link names, and accessible button names, individually and collectively deny Plaintiff and the Class full and equal enjoyment of the goods and services offered on the Website.

46. Defendant's discriminatory conduct includes: (a) the failure to remove architectural barriers that are structural in nature where removal is readily achievable; (b) the failure to provide an accessible alternative to the Website where it is not readily achievable to remove barriers; and (c) the use of standards, criteria, or methods of administration that have the effect of discriminating against the disabled.

47. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth in 42 U.S.C. § 2000a-3(a), Plaintiff is entitled to injunctive relief requiring Defendant to make **www.arcticcool.com** fully accessible to blind and visually impaired individuals, including by bringing the Website into conformance with WCAG 2.1 Level AA, as well as attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505.

**SECOND CAUSE OF ACTION**
**Violations of the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.**
**(On Behalf of Plaintiff and the New York Subclass)**

48. Plaintiff incorporates by reference each of the foregoing allegations.

49. New York Executive Law § 296(2)(a) provides that it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager,

superintendent, agent, or employee of any place of public accommodation, resort, or amusement, because of the disability of any person, directly or indirectly, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges thereof.

50. Defendant's Website constitutes a place of public accommodation within the meaning of the New York State Human Rights Law. N.Y. Exec. Law § 292(9).

51. Defendant has discriminated against Plaintiff and the New York Subclass by denying them full and equal access to the goods, services, privileges, and advantages of its Website on the basis of their visual disability, in violation of N.Y. Exec. Law § 296(2).

52. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff and the New York Subclass have suffered and continue to suffer injury and damages, including the loss of full and equal access to Defendant's goods and services, and are entitled to compensatory damages, injunctive relief, and attorneys' fees and costs pursuant to N.Y. Exec. Law § 297.

## **THIRD CAUSE OF ACTION**
**Violations of the New York State Civil Rights Law, N.Y. Civ. Rights Law §§ 40 et seq.**
**(On Behalf of Plaintiff and the New York Subclass)**

53. Plaintiff incorporates by reference each of the foregoing allegations.

54. New York Civil Rights Law § 40 provides that all persons within the jurisdiction of the State of New York shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodation, resort, or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. New York Civil Rights Law § 40-c provides that no person shall, because of disability, be subjected to any discrimination in his or her civil rights, or be denied, under the color of any state law or otherwise, the full enjoyment of any of the accommodations, advantages, facilities, or privileges

of places of public accommodation.

55. Defendant's Website constitutes a place of public accommodation within the meaning of the New York Civil Rights Law. N.Y. Civ. Rights Law § 40.

56. Defendant has violated N.Y. Civ. Rights Law §§ 40 and 40-c by denying Plaintiff and the New York Subclass the full and equal enjoyment of the accommodations, advantages, facilities, and privileges offered through its Website on the basis of their visual disability.

57. Pursuant to N.Y. Civ. Rights Law § 40-d, Plaintiff and the New York Subclass are entitled to recover a penalty of not less than one hundred dollars ($100) nor more than five hundred dollars ($500) for each and every violation, in addition to actual damages, injunctive relief, and such other and further relief as this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Violations of the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 et seq.**
**(On Behalf of Plaintiff and the New York Subclass)**

58. Plaintiff incorporates by reference each of the foregoing allegations.

59. The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a), provides that it shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place or provider of public accommodation, because of any person's actual or perceived disability, directly or indirectly, to refuse, withhold from, or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities, or privileges of the place or provider of public accommodation.

60. Defendant's Website constitutes a place or provider of public accommodation within the meaning of the NYCHRL. N.Y.C. Admin. Code § 8-102.

61. Defendant has violated the NYCHRL by denying Plaintiff and the New York Subclass

full and equal enjoyment of the goods, services, advantages, and privileges of its Website on the basis of their visual disability. The NYCHRL is to be construed broadly to accomplish its remedial purposes and is not limited by or co-extensive with any other law.

62. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff and the New York Subclass have suffered and continue to suffer injury and are entitled to compensatory damages, civil penalties, punitive damages, injunctive relief, and attorneys' fees and costs pursuant to N.Y.C. Admin. Code §§ 8-120 and 8-502.

## FIFTH CAUSE OF ACTION
**Declaratory Relief**
**(On Behalf of Plaintiff and the Class)**

63. Plaintiff incorporates by reference each of the foregoing allegations.

64. An actual, present, and justiciable controversy has arisen and now exists between the parties regarding whether Defendant's Website, **www.arcticcool.com**, violates Title III of the ADA, the New York State Human Rights Law, the New York State Civil Rights Law, and/or the New York City Human Rights Law by failing to be accessible to blind and visually impaired individuals who rely on screen-reading software.

65. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff, on behalf of herself and the Class, seeks a declaratory judgment that Defendant's Website violates Title III of the ADA because it fails to provide full and equal access to blind and visually impaired individuals in violation of 42 U.S.C. § 12182, and that Defendant's Website further violates applicable New York State and New York City law as set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ANGEL JENKINS, individually and on behalf of all Class members, respectfully requests that this Court:

A. Certify this action as a class action pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, designate Plaintiff as the Class representative, and appoint Plaintiff's counsel as Class counsel;

B. Enter a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant's Website, www.arcticcool.com, violates Title III of the ADA, the New York State Human Rights Law, the New York State Civil Rights Law, and the New York City Human Rights Law, as set forth herein;

C. Enter permanent injunctive relief requiring Defendant to take all steps necessary to bring www.arcticcool.com into full conformance with WCAG 2.1 Level AA and to ensure the Website is fully accessible to blind and visually impaired individuals who use screen-reading software, and to maintain such accessibility on a continuing basis;

D. Award compensatory damages to Plaintiff and the New York Subclass pursuant to the New York State Human Rights Law and the New York City Human Rights Law, in an amount to be determined at trial;

E. Award statutory damages, civil penalties, and punitive damages, as applicable, pursuant to the New York State Civil Rights Law, N.Y. Civ. Rights Law § 40-d, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-120 and 8-502;

F. Award Plaintiff and Class counsel reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, N.Y. Exec. Law § 297, and N.Y.C. Admin. Code § 8-502; and

G. Grant such other and further relief as this Court deems just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
June 25, 2026

Respectfully submitted,

*/s/ Robert Schonfeld*

**Robert Schonfeld, Esq.**

**JOSEPH & NORINSBERG, LLC**

110 East 59th Street, Suite 2300

New York, New York 10022

Tel: (212) 227-5700

*Attorneys for Plaintiff and the Class*